771 So.2d 541 (2000)
W. Ward AKSOMITAS, Appellant,
v.
Sabitra MAHARAJ a/k/a Sabita Maharaj, Appellee.
No. 4D98-0170.
District Court of Appeal of Florida, Fourth District.
May 3, 2000.
Opinion Denying Rehearing August 30, 2000.
Rehearing Denied September 13, 2000.
Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, and F. Kendall Slinkman of F. Kendall Slinkman, P.A., West Palm Beach, for appellant.
*542 James M. McCann, Jr., Nancy A. Romfh and Alan M. Herman of Akerman, Senterfitt & Eidson, P.A., West Palm Beach, for appellee.
James M. McCann, Jr., Nancy A. Romfh, Alan M. Herman and Celeste B. Marcks of Akerman, Senterfitt & Eidson, P.A., West Palm Beach, for appellee on rehearing.
KLEIN, J.
Ward Aksomitas brought this action to foreclose a mortgage, but the trial court found that there was no consideration and denied foreclosure. He appeals, and we reverse.
Aksomitas, a lawyer, had represented the Maharajs until Mr. Maharaj died in 1986. After his death, Aksomitas claimed that he was owed attorney's fees for work he performed over a period of six years, and Mrs. Maharaj, in 1986, executed a promissory note in the amount of $150,000, secured by a mortgage, in favor of Aksomitas. Maharaj did not pay the mortgage when it became due in 1988, and it was extended several times, but not paid.
Maharaj, who owned several pieces of property besides the one secured by the Aksomitas mortgage, began to have financial problems, and in 1993 she asked Aksomitas to help her get a loan. At the request of Aksomitas, Mr. and Mrs. Samsonis agreed to lend Maharaj money if it was secured by her Loxahatchee Grove property. That property, however, was the security for Aksomitas' 1986 mortgage. Aksomitas then contacted the Mandell-Mueller Group, which had loaned money to the Maharajs in the past. Mandell-Mueller agreed to loan Maharaj money in return for a first mortgage on a parcel called Cypress Head. The proceeds of that loan were to be used to pay off the note to Aksomitas and satisfy his mortgage on Loxahatchee Grove. That would free up the Loxahatchee Grove property to secure the Samsonis loan.
In furtherance of this plan, Aksomitas recorded a satisfaction of his mortgage on Loxahatchee Grove, even though he had not yet been paid. He also had Maharaj sign the Mandell-Mueller note and mortgage. Mandell-Mueller then refused to fund their loan, the proceeds of which were to be used to pay off Aksomitas. Aksomitas, concerned that he now had no security for his note, had Mandell-Mueller assign the unfunded note and mortgage to Aksomitas. The Samsonis loan was funded and that enabled Maharaj to stave off a foreclosure of a lien on another parcel.
In 1994, about a year after the above-described transactions, Maharaj contacted Aksomitas and asked for a partial release of the Mandell-Mueller mortgage which Aksomitas held and Aksomitas gave it to her. The Mandell-Mueller mortgage became due in November, 1995, and Maharaj requested an extension, which was granted by a written agreement to November 1997. Maharaj paid $20,000 in interest at that time, but made no further payments, and Aksomitas ultimately filed this foreclosure action as assignee of the Mandell-Mueller mortgage.
Maharaj filed an answer containing a number of defenses, one of which was that there was no consideration for the Mandell-Mueller note and mortgage. After a non-jury trial, the court found that there was no consideration for the mortgage given by Maharaj to Mandell-Mueller, because the loan was never funded. The court reasoned that because Mandell-Mueller never obtained an enforceable note and mortgage, Aksomitas, who took the assignment of the note and mortgage from Mandell-Mueller with knowledge, could not enforce it either.
In Citibank International v. Mercogliano, 574 So.2d 1190 (Fla. 3d DCA 1991), Mercogliano executed a note and mortgage in favor of a bank after it was determined that her home had been purchased with bank funds embezzled by a third party. When the bank foreclosed, the trial court found that because the bank had not funded the mortgage, there was no consideration. The third district reversed, *543 concluding that there was consideration because the bank had taken no further action in regard to the embezzlement. The fact that a mortgage is not actually funded, accordingly, does not mean there is no consideration. See also Crum v. United States Fidelity and Guar. Co., 468 So.2d 1004 (Fla. 1st DCA 1985)(a preexisting debt can be sufficient consideration for a mortgage).
We agree with Aksomitas that the trial court erred in viewing the issue of consideration too narrowly. It is undisputed that Aksomitas satisfied the 1986 note and mortgage that Maharaj had given Aksomitas on Loxahatchee Grove, even though that note and mortgage were never paid. Aksomitas then had Mandell-Mueller assign him the Mandell-Mueller mortgage in order to protect himself for having satisfied his own mortgage prematurely. Although there may have been no consideration from Mandell-Mueller, Maharaj clearly benefitted from the whole transaction, because the 1986 note' and mortgage to Aksomitas on Loxahatchee Grove were satisfied, and that constitutes consideration.
Because the trial court ruled that there was no consideration it did not address Maharaj's remaining defenses. We therefore reverse and remand for further proceedings.
WARNER, C.J., and OWEN, WILLIAM C., Jr., Associate Judge, concur.

EN BANC

ON MOTION FOR REHEARING OF ORDER GRANTING ATTORNEY'S FEES
KLEIN, J.
When we reversed the final judgment in this case, Aksomitas v. Maharaj, 771 So.2d ___ (Fla. 4th DCA 2000), we granted appellee Maharaj's motion for appellate attorney's fees conditioned on her ultimately prevailing in the litigation. Her motion for attorney's fees alleged that she was contractually entitled to them and had been awarded fees by the trial court.
Appellant Aksomitas, who prevailed on this appeal, has moved for rehearing of the order awarding attorney's fees, citing General Accident Insurance Co. v. Packal, 512 So.2d 344 (Fla. 4th DCA 1987). In that case we held that in order to be awarded prevailing party attorney's fees for services rendered on appeal, a party had to win the appeal in addition to ultimately prevailing in the litigation. Under Packal, a party who ultimately prevails in the litigation, but loses an appeal during the litigation, cannot be reimbursed for fees incurred for that appeal. We followed Packal in Cline v. Gouge, 537 So.2d 625 (Fla. 4th DCA 1988).
In Packal we did not give any reasons why we were establishing the rule, but we may have been influenced because of the manner in which appellate costs are assessed.[1] Florida Rule of Appellate Procedure 9.400(a) provides that "costs shall be taxed in favor of the prevailing party unless the court orders otherwise." This rule has consistently been interpreted as requiring the imposition of appellate costs in favor of the party prevailing on that particular appeal, regardless of who ultimately prevails in the litigation. Stringer v. Katzell, 695 So.2d 369 (Fla. 4th DCA 1997) and cases cited. No rule, however, requires that same result with attorney's fees.
When prevailing party attorney's fees are assessed at the conclusion of litigation, *544 the trial court determines "which party has in fact prevailed on the significant issues tried before the court." Moritz v. Hoyt Enter., Inc., 604 So.2d 807, 810 (Fla.1992). Trial courts, however, have no authority to award prevailing party attorney's fees for an appeal unless specifically authorized to do so by the appellate court. Foley v. Fleet, 652 So.2d 962 (Fla. 4th DCA 1995); Travelers Indem. Co. of Am. v. Morris, 390 So.2d 464 (Fla. 3d DCA 1980). Appellate courts are thus required to rule on motions for prevailing party attorney's fees without knowing who will ultimately prevail. This court grants those motions contingent on that party prevailing, leaving the determination of the amount to the trial court, as is authorized by rule 9.400(b).
We now recognize that the inflexible rule of Packal is contrary to the public policy behind statutes which provide for prevailing party attorney's fees. For example, section 627.428, Florida Statutes, provides that an insured who prevails in litigation against an insurer is entitled to recover attorney's fees from the insurer. The purpose of the statute is to make the insured whole, i.e., in the same position the insured would had been if the insurer had paid the claim without litigation. Clay v. Prudential Ins. Co. of Am., 617 So.2d 433 (Fla. 4th DCA 1993), citing Insurance Co. of N. Am. v. Lexow, 602 So.2d 528 (Fla.1992)(purpose of section 627.428 is to "reimburse successful insureds for their attorney's fees."). Under Packal, however, if the insured loses an appeal during the litigation, but ultimately recovers under the policy, the insured cannot recover fees for services rendered on the appeal. The policy behind the statute, which is to make the insured whole, is thus frustrated. Packal is also inconsistent with the intent of the parties in the present case, who agreed that the prevailing party in litigation should be reimbursed for fees.
Packal, which singles out appeals, is also arguably inconsistent with Moritz, which holds that prevailing party attorney's fees should be awarded to the party prevailing on the "significant issues." Id. at 810. Moritz does not authorize the denial of prevailing party attorney's fees for an appeal which the ultimate prevailing party lost somewhere along the line. We don't deny prevailing party attorney's fees to a litigant for services rendered in a trial, where the litigant loses that trial, but ultimately prevails, and there is no logical reason to have a different rule applicable to appeals.
We therefore recede from Packal and Cline[2] to the extent that they hold that a party who ultimately prevails in the litigation cannot be awarded attorney's fees for services rendered on an appeal unless that party also prevailed on the appeal. When we are ruling on motions for prevailing party attorney's fees, we will normally grant the motion contingent on the party ultimately prevailing. At the conclusion of the litigation, the trial court can then, under Moritz, award attorney's fees to the party prevailing on the significant issues. We used the word "normally" above because we may deny fees where the work performed on an appeal is unnecessary. That would include fees sought by an appellant for an appeal which should never have been taken and fees sought by an appellee who should have confessed error. See, e.g., Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1150 (Fla.1985)(prevailing party attorney's fees can be reduced for work which is "unnecessary").
The motion for rehearing is denied.
*545 WARNER, C.J., DELL, GUNTHER, STONE, POLEN, FARMER, STEVENSON, SHAHOOD, GROSS, TAYLOR, and HAZOURI, JJ., concur.
NOTES
[1] We cited four cases in Packal to support our conclusion: Mainlands Constr. Co. v. Wen-Dic Constr. Co., 482 So.2d 1369 (Fla.1986); Publix Super Markets, Inc. v. Cheesbro Roofing, Inc., 502 So.2d 484 (Fla. 5th DCA 1987); Magee v. Bishop Signs, Inc., 458 So.2d 1174 (Fla. 4th DCA 1984); Steinhardt v. Eastern Shores White House Ass'n, 413 So.2d 785 (Fla. 3d DCA 1982). Those cases did not involve the same issue as Packal.
[2] The second district cited Cline with approval in Sabina v. Dahlia Corp., 678 So.2d 822 (Fla. 2d DCA 1996); however, the reference was dicta. In Sabina, the second district concluded that it had erroneously awarded prevailing party attorney's fees on a non-final appeal, and it should have done so conditionally rather than unconditionally, because the winner of the appeal did not ultimately prevail.