602 So.2d 528 (1992)
INSURANCE COMPANY OF NORTH AMERICA, Appellant,
v.
Clausson P. LEXOW, et al., Appellees.
No. 78376.
Supreme Court of Florida.
July 16, 1992.
*529 Charles M. Johnston and Ada A. Hammond of Taylor, Day & Rio, Jacksonville, for appellant.
Robert Paul Keeley of Ellis, Spencer, Butler and Kisslan, Hollywood, for appellees.
GRIMES, Justice.
We review Insurance Co. of North America v. Lexow, 937 F.2d 569 (11th Cir.1991), in which the United States Court of Appeals for the Eleventh Circuit certified a question of law which is determinative of the cause and for which there is no controlling precedent in this Court. We have jurisdiction under article V, section 3(b)(6) of the Florida Constitution. See also § 25.031, Fla. Stat. (1991); Fla.R.App.P. 9.150.
The pertinent facts and the history of this litigation are stated in the federal court's opinion as follows:
I. BACKGROUND
In 1981, Clausson Lexow and other family members organized United Storage Systems, Inc. (collectively, Lexow) to operate as a mini-warehouse or consumer storage facility in Ocala, Florida. Known as The Extra Closet of Ocala, Ltd., the business opened to the public in January, 1982. The business prospered, and renovation of the building commenced. When the work was near completion, an electrical fire occurred and totally destroyed the building and its contents on August 1, 1983. The damage to stored property generated customers' lawsuits and such unfavorable publicity that Lexow decided not to rebuild and to start the business anew.
Pursuant to Lexow's claim submitted to its insurer, Insurance Company of North America (INA), Lexow received $430,571.26 for which a subrogation receipt was executed. INA and Lexow jointly sued in state court the two tortfeasors deemed to be responsible for the fire. Each of the tortfeasors had insurance with policy limits of $100,000. During the litigation, one of the tortfeasors was placed in receivership. While Florida law precluded INA from recovery against an insolvent insurer, Lexow obtained $99,900 from the receivership. Thereby, Lexow increased the funds that it had recovered for the loss to $530,471.26. The insurance carrier for the other tortfeasor paid its policy limits of $100,000, which amount INA placed in an interest bearing account.
Based on diversity jurisdiction, INA subsequently instigated an action in federal court in the Middle District of Florida for a declaratory judgment regarding the rights and obligations of INA and Lexow with respect to the $100,000. Lexow filed a counterclaim requesting attorney's fees and costs if the court entered judgment in its favor. INA asserted its right to the $100,000 under the subrogation receipt. Lexow claimed the proceeds because the funds that it had received were insufficient to recompense its total loss. Consequently, Lexow has contended throughout this litigation that INA's subrogation right cannot be activated until Lexow has been reimbursed completely.
Following a nonjury trial, the district court determined that Lexow was entitled to the $100,000 because Lexow had sustained total damages in excess of $630,471.26, or the $530,471.26 already received plus the $100,000 in dispute. Using the common law subrogation principle, endorsed by Florida courts, the district court reasoned that the insured was entitled to be made whole before the *530 subrogated insurer could participate in the recovery from a tortfeasor. The district court concluded that the subrogation receipt did not function as an assignment of Lexow's claim against the tortfeasors, but was an acknowledgment of INA's common law right of subrogation. Judgment was entered for Lexow, and Lexow's entitlement to the $100,000 is not an issue in this case.
Subsequently, Lexow filed a motion, requesting the district court to determine prejudgment interest as well as to award costs and attorney's fees. Under Florida law, the district court awarded Lexow prejudgment interest at the annual rate of 12% from February 23, 1988, the date that INA obtained the disputed $100,000, until July 12, 1989, the date that judgment was entered in Lexow's favor. The district court, however, denied Lexow's motion for attorney's fees. The parties appeal these district court rulings, which we address.
Id. at 570-71 (footnotes omitted).
The federal appeals court affirmed the award of prejudgment interest. However, with reference to the issue of attorney's fees, the court certified the following question:
DOES THE PHRASE "UNDER A POLICY OR CONTRACT" IN FLORIDA STATUTES, § 627.428(1) INCLUDE SUBSEQUENT LITIGATION TO DETERMINE WHETHER THE INSURED OR THE SUBROGATED INSURER IS ENTITLED TO FUNDS OBTAINED BY THE INSURED FROM A TORTFEASOR AFTER THE INSURER HAS PAID THE INSURED ITS POLICY LIMITS, ALTHOUGH THESE FUNDS ARE INSUFFICIENT TO COMPENSATE THE INSURED'S LOSS, FOR THE PURPOSE OF AWARDING ATTORNEY'S FEES TO THE INSURED ACQUIRING A JUDGMENT AGAINST THE INSURER FOR THE FUNDS RECEIVED FROM THE TORTFEASOR?
Id. at 574.
The answer to this question requires an interpretation of section 627.428(1), Florida Statutes (1987), which reads as follows:
(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.
Lexow argues that section 627.428(1) reflects Florida's public policy that requires a litigious insurer to pay an insured's attorney's fees when the insured is forced to litigate in order to obtain payment under its insurance policy or to protect the benefits received from an insurer's performance of its policy obligations. Because INA unsuccessfully sought to recover a portion of what it was obligated to pay under the policy, it must reimburse Lexow for his attorney's fees. In support of his position, Lexow cites Molyett v. Society National Life Insurance Co., 452 So.2d 1114 (Fla. 2d DCA 1984), in which the court summarily imposed the payment of attorney's fees upon an insurer which had unsuccessfully sought to pursue a subrogation claim against its insured's recovery from a third-party tortfeasor. See also Florida Rock & Tank Lines, Inc. v. Continental Ins. Co., 399 So.2d 122 (Fla. 1st DCA 1981) (insurer obligated for attorney's fees because of unsuccessful claim for reimbursement of costs of defending insured against a liability claim).
INA first reminds us that section 627.428(1) must be strictly construed because an award of attorney's fees is in derogation of common law. Roberts v. Carter, 350 So.2d 78 (Fla. 1977). INA argues that once it paid its full policy limits to Lexow, its obligations under the insurance policy had come to an end. Thus, the dispute over the entitlement to the fund recovered from the third-party tortfeasor was not a dispute under the insurance policy and did not involve *531 INA's policy obligations to Lexow. In support of its argument, INA refers to Forsyth v. Southern Bell Telephone & Telegraph Co., 162 So.2d 916 (Fla. 1st DCA 1964). In that case, an insurer had lost its subrogation claim seeking proration of a settlement paid by a third-party tortfeasor to the insured. The court held that the insurer did not have to pay attorney's fees because the suit was in the nature of an action in rem against the fund of money recovered from the third party. Id. at 921-22; accord Government Employees Ins. Co. v. Graff, 327 So.2d 88 (Fla. 1st DCA 1976).
Florida courts have consistently held that the purpose of section 627.428 and its predecessor is to discourage the contesting of valid claims against insurance companies and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts. Wilder v. Wright, 278 So.2d 1 (Fla. 1973); Feller v. Equitable Life Assurance Soc'y, 57 So.2d 581 (Fla. 1952); Fewox v. McMerit Constr. Co., 556 So.2d 419 (Fla. 2d DCA 1989); Leaf v. State Farm Mut. Auto. Ins. Co., 544 So.2d 1049 (Fla. 4th DCA 1989). We are persuaded that the lawsuit involved in this case falls within the scope of this rationale.
In the instant case, the resolution of the dispute over who was entitled to the fund paid by the third-party tortfeasor ultimately determined whether the claim was fully paid under the insurance contract. If the claim was fully paid, INA would have recovered the excess of the amount received by Lexow over the amount of Lexow's claim in the subrogation suit. It is important to note that INA's right to claim subrogation exists solely by virtue of having paid a claim under the policy. Thus, any dispute with Lexow concerning subrogation in this case arises under the policy.
Initially, INA paid Lexow the limits under the policy. However, if INA had been successful in its subsequent suit against Lexow for reimbursement, INA's payments would be reduced to an amount less than the policy limits. There is little difference between paying an insurance claim and then suing for its return and refusing to pay the claim in the first place. If the tortfeasor paid Lexow and then Lexow made his claim against INA, Lexow would have been entitled to attorney's fees under section 627.428(1) if INA had refused to pay the entire claim. Why should there be a different result when INA first paid the claim and then unsuccessfully sought to recover some of it back?
We reject the argument that attorney's fees should not be assessed against INA because this dispute involved a type of claim which reasonably could be expected to be resolved by a court. INA's good faith in bringing this suit is irrelevant. If the dispute is within the scope of section 627.428 and the insurer loses, the insurer is always obligated for attorney's fees. This is not a case like Manufacturers Life Insurance Co. v. Cave, 295 So.2d 103 (Fla. 1974), or Equitable Life Assurance Society v. Nichols, 84 So.2d 500 (Fla. 1956), in which the insurance company did not deny liability but simply became involved in a dispute over which of two claimants was entitled to the benefits of the policy.
Accordingly, we answer the certified question in the affirmative. Having answered the certified question, we return the record to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
BARKETT, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
McDONALD, J., dissents.