944 So.2d 1028 (2006)
LIBERTY NATIONAL LIFE INSURANCE COMPANY, a foreign, for profit corporation, Appellant,
v.
Nancy BAILEY, by and through Rosemary M. BAILEY, as attorney in fact, Appellee.
No. 2D05-929.
District Court of Appeal of Florida, Second District.
June 16, 2006.
Rehearing Denied August 7, 2006.
*1029 Charles W. Pittman of Macfarlane Ferguson & McMullen, Tampa, for Appellant.
Kimberly S. Mello and Craig P. Clendinen of A Bales Weinstein Professional Association, Tampa, for Appellee.
LaROSE, Judge.
Liberty National Life Insurance Company (Liberty) appeals the trial court's final order awarding attorneys' fees and costs, totalling $60,933.50, to Nancy Bailey pursuant to section 627.428, Florida Statutes (2003). Liberty argues that it did not wrongfully deny insurance benefits to Ms. Bailey and, therefore, was not liable for attorneys' fees. We agree and reverse.
In April 1987 and April 1996, Liberty issued life insurance policies to Ms. Bailey. Each policy included a premium waiver rider. If Ms. Bailey became disabled for six months "as a result of bodily injury sustained or disease originating after the effective date of this rider," Liberty would waive premium payments on the policies. Liberty required a timely written notice of claim and proof of total disability before it would waive premiums.
In 2002, Ms. Bailey submitted a timely claim to Liberty for total disability benefits. Her claim form disclosed that her debilitating illness began when Ms. Bailey was fifteen years old. Ms. Bailey submitted her treating physician's statement that also reflected that Ms. Bailey's illness began at age fifteen. On its face, this information demonstrated that Ms. Bailey's illness predated the issuance of both policies. In fact, however, the onset of Ms. Bailey's illness occurred in November 2001, well after issuance of the policies.[1]
Based on the information submitted by Ms. Bailey, and unaware of the error concerning the onset of her illness, Liberty denied her claim for premium waivers:
Since your policies do not provide premium waiver benefits when the illness that resulted in your disability originated prior to the effective date of coverage under these policies we are unable to approve your request. Our decision is based on the facts as we know them. If we can be of assistance in the future, please let us know.
Although she did not have immediate access to her medical records, Ms. Bailey knew that her illness began and was diagnosed after the issuance of the policies. After consulting with counsel, Ms. Bailey sued Liberty for breach of contract in May 2003. When she filed suit, Ms. Bailey had not obtained her medical records from her physician but did have copies of her claim documents and Liberty's denial letter. Despite what appears to be an error, neither Ms. Bailey nor her counsel attempted to contact the Liberty representative who denied her claim.
In August 2003, Liberty answered the complaint, claiming that it denied Ms. Bailey's premium waiver claim because the information submitted by Ms. Bailey reflected that her illness began before Liberty issued the two policies. Liberty also filed a summary judgment motion; the trial court never ruled on that motion.
In October 2003, Ms. Bailey finally obtained her medical records. Those records confirmed that her illness began after the effective dates of her policies. Upon receipt and verification of this new information, Liberty granted the premium waivers and issued refund checks to Ms. Bailey for *1030 the premiums paid from her claim date to the current date, plus interest.[2]
Subsequently, Ms. Bailey sought attorneys' fees under section 627.428. According to Ms. Bailey, Liberty conceded her entitlement to the premium waivers and that concession operated as a confession of judgment. See Stewart v. Midland Life Ins. Co., 899 So.2d 331, 333 (Fla. 2d DCA 2005). Relying on Insurance Company of North America v. Lexow, 602 So.2d 528, 531 (Fla.1992), the trial court concluded that Ms. Bailey was entitled to fees because Liberty lost.
The trial court later awarded Ms. Bailey almost $61,000 in fees and costs, with a 2.0 multiplier applied to the lodestar fee amount. The trial court recognized that, initially, Ms. Bailey submitted erroneous information to Liberty. Nevertheless, the trial court concluded that Liberty could have reduced or eliminated any enhanced fee by investigating Ms. Bailey's claim before denying it. The trial court erred. Ms. Bailey's claim did not trigger a duty to investigate by Liberty. On its face, her initial claim demonstrated that Ms. Bailey was not entitled to premium waivers. Furthermore, Liberty had no statutory obligation to investigate the facially insufficient claim. See § 627.425; cf. § 627.736(4)(b); Ivey v. Allstate Ins. Co., 774 So.2d 679, 684 (Fla.2000) (holding that burden is on insurer to authenticate claim under PIP statute and to abide by statutory time period). Moreover, here, the denial of an insurance claim based on erroneous information provided by the insured does not rise to the level of wrongful conduct necessary to impose a fee award against the insurer.
Ms. Bailey's reliance on Lexow is misplaced. Lexow did not involve a claim for benefits nor was there any issue involving erroneous information submitted to the insurer. Rather, Lexow involved a subrogation dispute between an insured and its insurer over proceeds paid by a tortfeasor's insurer. Significantly, Lexow reiterated the long-established view that the purpose of section 627.428 is to discourage insurers from contesting valid claims and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their policy rights. 602 So.2d at 531. The insurer in Lexow was obligated to pay attorneys' fees because it "unsuccessfully sought to recover a portion of what it was obligated to pay under the policy. . . ." Id. at 530. In contrast, upon receipt of Ms. Bailey's initial claim, Liberty had no obligation to pay. We reject Ms. Bailey's contention that section 627.428 imposes strict liability on an insurer for attorneys' fees even in cases where a valid claim was not submitted.
Rather, we recognize that section 627.428 is a penalty in derogation of the common law. Thus, we construe it strictly. Hartford Accident & Indem. Co. v. Smith, 366 So.2d 456, 457 (Fla. 4th DCA 1978). Section 627.428 allows an award of attorneys' fees as a penalty to discourage wrongful refusals to pay policy benefits. Time Ins. Co. v. Arnold, 319 So.2d 638, 640 (Fla. 1st DCA 1975) (holding refusal to pay not wrongful; Time had no obligation to doubt erroneous information contained in notice of claim so it was error to award attorneys' fees against it). We fail to see how Liberty can be liable for fees in denying a claim that was facially inadequate. Failure to pay such a claim does not constitute *1031 wrongful conduct. See, e.g., Equitable Life Assurance Soc'y of U.S. v. Nichols, 84 So.2d 500, 502 (Fla.1956) (holding under predecessor statute that attorneys' fees were recoverable only when insurer has wrongfully withheld paying of proceeds of policy); Gov't Employees Ins. Co. v. Battaglia, 503 So.2d 358, 360-61 (Fla. 5th DCA 1987) (stating that purpose of section 627.428 is to penalize insurer for wrongfully causing its insured to resort to litigation; court found no wrongful act by insurer and found it unfair to penalize insurer for trial court's erroneous failure to grant insurer's motion for summary judgment); Time Ins. Co., 319 So.2d at 640; but see Stewart, 899 So.2d at 333 (holding that where valid claim was made, insurer required no further information, and insurer wrongfully withheld payment beyond sixty days, section 627.428 authorizes attorneys' fees to insured or beneficiary).
Based on the record before us, Ms. Bailey was not entitled to an award of attorneys' fees under section 627.428.
Reversed and remanded to the trial court with directions to vacate the order awarding attorneys' fees.
WHATLEY and STRINGER, JJ., Concur.
NOTES
[1] The record indicates several factual disputes concerning the completion and submission of the claim documentation. As we will explain, the trial court never resolved these factual disputes.
[2] Given Liberty's actions when it received the correct information from Ms. Bailey, we must wonder whether she could have achieved her objective more expeditiously and efficiently through presuit communicationsa letter, perhaps a telephone callbetween Liberty and Ms. Bailey's counsel.